
09/17/2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MONTRE ARIYASERBSIRI, | § | Case No. 07-41348 |
| | § | (Chapter 13) |
| Debtor. | § | |

## **MEMORANDUM OPINION**

This matter is before the Court to consider confirmation of the Chapter 13 plan proposed by the Debtor, Montre Ariyaserbsiri, in his Chapter 13 case. The Chapter 13 trustee objects to confirmation on the grounds that, among other things, the proposed term of the Debtor's plan is shorter than the applicable commitment period required by 11 U.S.C. §1325(b)(4). The Court heard the Chapter 13 trustee's objections to confirmation on June 11, 2008 and, consistent with its oral ruling at the conclusion of the hearing, finds that confirmation should be denied for the following reasons.

### **RELEVANT BACKGROUND**

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 22, 2007 (the "Petition Date"). Although the Debtor was married as of the Petition Date, with one minor child, he filed his case individually. At the confirmation hearing, he testified that he filed for bankruptcy because he could not afford to repay his unsecured credit card debts, which he had accumulated through gambling. He testified that his wife did not participate in his gambling and that he did not tell his wife when he filed for bankruptcy.

The Debtor is employed as a bartender, and his wife is employed an accountant. Prior to the Debtor's bankruptcy, the Debtor and his wife kept separate bank and credit

accounts. The Debtor obtained information regarding his wife's income, which he disclosed in his bankruptcy schedules, by surreptitiously examining her pay stubs.

Official Form 22C, which was annexed to the Debtor's petition, (i) disclosed the Debtor's "current monthly income" as defined in §101(10A) of the Bankruptcy Code, (ii) included a derivation of the "applicable commitment period" as defined in §1325(b)(4) of the Bankruptcy Code, and (iii) calculated the Debtor's "disposable income" as defined in §1325(b)(2) of the Bankruptcy Code. The Debtor reported total monthly income of $7,440.34. Of this amount, the Debtor attributed $1,233.67 to his employment and $6,206.67 to his spouse. In calculating the applicable commitment period for his plan, the Debtor took a marital adjustment at lines 13 and 19, deducting the sum of $3,214.00 from his monthly income. On line 15 of Official Form 22C, the Debtor reported annualized income of $50,716.08. Since this amount was less than the median income of a family of three living in Texas at the time of filing (*i.e.*, $51,678.00), the Debtor determined in line 17 that the applicable commitment period for this case is three years.

The Debtor filed an amended Official Form 22C on August 22, 2007. In his amended Official Form 22C, the Debtor increased his marital adjustment at lines 13 and 19 from $3,214.00 to $3,728.00. This figure included withholding taxes, insurance, retirement savings, and life insurance payments as well as income not contributed to household expenses in the amount of $1,608.00. Thus, on line 15 of his amended Official Form B22C, the Debtor reported an annualized income of $44,548.08.

On April 1, 2008, the Debtor once again amended his Official Form 22C. In his second amended Official Form 22C, the Debtor decreased his reported household size from three to two. Since his calculations showed that his annualized monthly income

2

was less than the median income of a family of two living in Texas at the time of filing (*i.e.*, $48,849.00), the Debtor determined in line 17 that the applicable commitment period for this case is three years. The Debtor testified at the confirmation hearing that he reduced his household size from three to two because his wife pays all of her own bills as well as the majority of the household expenses.

The Debtor has amended his proposed Chapter 13 plan several times. In his Second Amended Chapter 13 Plan dated February 14, 2008, the Debtor proposes to pay $100 per month to the Chapter 13 trustee for 44 months, for total payments of $4,400.00. After paying his attorneys' fees and administrative costs, the Debtor estimates that his general unsecured creditors will receive a pro-rata share of $2,735.00. The Debtor estimates that his total general unsecured debt is $94,773.00.

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §157 and 1334. The Court has the authority to enter a final order in this contested matter because it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

## DISCUSSION

The essence of a Chapter 13 case is the bargain between the debtor and the debtor's creditors whereby the debtor is allowed to keep pre-petition property in exchange for promising a future stream of payments to the debtor's pre-petition creditors. *See In re McNeely*, 366 B.R. 542, 548 (Bankr. N.D. W. Va. 2007). At issue in this case is the length of time the Debtor must make payments to his pre-petition creditors. The Bankruptcy Abuse and Consumer Protection Act of 2005 (the "BAPCPA") amended §1325(b)(4) of the Bankruptcy Code to mandate plan length depending on the debtor's

3

household size and median family income. The current §1325(b)(4) provides in pertinent part that "the 'applicable commitment period' … shall be … 3 years … or … not less than 5 years, if the *current monthly income of the debtor and the debtor's spouse combined*, when multiplied by 12, is not less than … in the case of a debtor in a household of 2, 3 or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals …." 11 U.S.C. §1325(a)(4)(A)(ii)(II) (emphasis added).

The Debtor and the Chapter 13 trustee dispute the proper manner of calculating the "current monthly income of the debtor and the debtor's spouse combined." The Debtor asserts that only his current monthly income, as defined by the Bankruptcy Code, should be used for determining the applicable commitment period under §1325(a)(4)(A)(ii)(II). The Chapter 13 trustee argues that §1325(a)(4)(A)(ii)(II) requires the Court to consider the income of the Debtor's non-filing spouse and that, when the income of the Debtor and his non-filing spouse are combined, the applicable commitment period is five years.

It is well settled that "when the statute's language is plain, the sole function of the courts -- at least where the disposition is not absurd -- is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) (citations and internal quotations omitted). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 254 (1992). Only in cases where the language of the statute is ambiguous or leads to absurdity should the Court look beyond the statute to try to ascertain the legislative intent. However, for language to be considered ambiguous,

4

it must be susceptible to "more than one reasonable interpretation" or "more than one accepted meaning," *Carrieri v. Jobs.com, Inc.,* 393 F.3d 508, 519 (5th Cir. 2004) (citing *U.S. v. Kay,* 359 F.3d 738, 743 (5th Cir. 2004)), and the canon against absurdities is a very narrow exception to the plain meaning rule that is only employed "where it is quite impossible that Congress could have intended the result ... and where the alleged absurdity is so clear as to be obvious to most anyone." *Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 470-71 (1989) (Kennedy, J. concurring in judgment).

Turning to the plain language of §1325(b)(4)(A)(ii), this provision as written mandates a five-year plan length in cases where "the current monthly income of the debtor and debtor's spouse combined" is more than the median family income of a household of similar size in the applicable State. Section 1325(b)(4)(A)(ii) does not simply reference a debtor's "current monthly income" as defined by §101(10A) of the Bankruptcy Code, but specifically relies upon the "current monthly income of the debtor and the debtor's spouse combined" when calculating the required plan length. For this purpose, the current monthly income of the debtor's spouse is required to be combined with the debtor's income – there is no statutory exception for non-filing spouses.

In this case, the Debtor and his non-filing spouse have total monthly income of $7,440.34. The majority of this income, $6,206.67, is attributable to the Debtor's non-filing spouse. The Debtor's spouse regularly withholds and does not contribute $3,728 of her income to pay household expenses. Thus, according to the Debtor's second amended Official Form B22C, the Debtor's current monthly income is $3,712.34.

There is no dispute that when the monthly income of the Debtor and the Debtor's spouse are combined and multiplied by twelve, as required by §1325(a)(4)(A)(ii)(II),

5

their income exceeds the median income of a family of the Debtor's size living in Texas – regardless of whether the household size is two or three. The Debtor, however, urges the Court to use only his current monthly income in calculating the applicable commitment period. The Debtor specifically argues that "the current monthly income of the debtor and the debtor's spouse combined" should be interpreted to mean "the current monthly income of the debtor and, *in a joint case*, the debtor's spouse, combined …." In short, the Debtor is not seeking an interpretation of the statute, but an impermissible enlargement or modification of it by the Court. *See Lamie v. US Tr.*, 540 U.S. 526, 538 (2004) (refusing to expand scope of statute by reading into it absent or omitted words). *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625 (1978) ("There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.").

Moreover, legislative history does not support the Debtor's argument. Senator Dianne Feinstein proposed amending §1325(b)(4)(A)(ii) by striking the phrase "debtor and the debtor's spouse combined" and inserting "debtor, and in a joint case, the debtor and debtor's spouse …." Senator Feinstein's proposed amendment was withdrawn without debate. *See* 151 Cong. Rec. S2134, 2138, 2137 (daily ed., March 7, 2005); 151 Cong. Rec. S2200 (daily ed., March 8, 2005); 151 Cong. Rec. S2307, S2342 (daily ed., March 9, 2005).[1]

Notably, other BAPCPA amendments specify when only a debtor's current monthly income should be considered. For example, in order to be confirmed, a proposed Chapter 13 plan must provide that all of the debtor's "disposable income" will

---

[1] The failure of Congress to adopt proposed amendments to legislation offers limited aid in the construction of the legislation. S*ee, e.g., U.S. v. Pan American Refining Corp.,* 219 F.2d 685, 689 (5th Cir. 1955).

be paid to creditors. *See* 11 U.S.C. §1325(b)(1). Section 1325(b)(2) states that "'disposable income' means *current monthly income* received by the debtor" less reasonably necessary expenditures for the living expenses of the debtor and any dependents and certain charitable contributions. 11 U.S.C. §1325(b)(2) (emphasis added). Section 1325(b)(3) provides that a debtor's reasonably necessary expenses are determined in accordance with §707(b)(2) "if the debtor has *current monthly income*" greater than the median income of a household of the same size in the applicable State. 11 U.S.C. §1325(b)(3) (emphasis added). Thus, bankruptcy courts look only to the debtor's current monthly income when determining the amount the debtor must pay to pre-petition unsecured creditors.

In contrast to §1325(b)(2) and (b)(3), the "applicable commitment period" defined in the next subsection, §1325(b)(4), specifically directs courts to look at "the current monthly income of the debtor and the debtor's spouse combined." It is a fundamental rule of statutory interpretation that, within an act, the same words have the same meanings and different words have different meanings. *See United States v. Gonzales,* 520 U.S. 1, 5 (1997) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983)) (internal quotation marks omitted). Inasmuch as Congress has used different language within the same statute, the Court infers that Congress intended that bankruptcy court's would calculate "the current monthly income of the debtor and the debtor's spouse combined" for purposes of determining the plan term differently than "the current monthly income received by the

7

debtor" for purposes of determining the amount to be dedicated to the repayment of unsecured creditors.

The Court is aware that several bankruptcy courts have interpreted §1325(b)(4)(A)(ii)(II) to exclude the income of a non-filing spouse when calculating the required length of a Chapter 13 plan. *See, e.g., In re Grubbs*, 2007 WL 4418146 (Bankr. E.D. Va. Dec. 14, 2007); *In re Borders*, 2008 WL 1925190 (Bankr. S.D. Ala. April 30, 2008) (following *Grubbs*). These courts have relied upon the definition of "current monthly income" set forth in §101(10A), which states that the term means "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive)" over the six months preceding the bankruptcy filing. 11 U.S.C. §101(10A). *Grubbs* and *Borders* reasoned that a non-filing spouse has no "current monthly income" within the meaning of §101(10A) and, therefore, the Chapter 13 trustee should insert a zero for the income of a non-filing spouse when calculating the applicable commitment period under §1325(b)(4)(A)(ii).[2] *See generally* 8 COLLIER ON BANKRUPTCY ¶1325.08[5][d] (15th ed. rev. 2007) (discussing the applicable commitment period in Chapter 13 cases).

However, in interpreting §1325(b)(4)(A)(ii)'s reference to the "current monthly income of the debtor and the debtor's spouse," the Court must avoid rendering words as mere surplusage. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989). This

---

[2] The Court in *Grubbs* also referenced Official Form 22C in its analysis. As previously discussed, Chapter 13 debtors calculate the applicable commitment period by using Official Form 22C. In particular, line 1 of Official Form 22C instructs the debtor to report both his and his spouse's income, regardless of whether the case is jointly filed. Then, to figure the applicable commitment period, line 13 instructs the debtor to take a "marital adjustment" for the portion of a non-debtor spouse's income that is not paid on a regular basis to the household expenses of the debtor or her dependents. Line 17 then directs the debtor to check a box indicating that the applicable commitment period is three years if his annualized income, as calculated in the preceding portion of Official Form 22C, is less than the applicable median income. In this case, in all the iterations of his Official Form 22C, the Debtor checked the box indicating the applicable commitment period under §1325(b)(4) of the Bankruptcy Code is three years.

8

Court cannot simply ignore some of the words Congress chose to use in §1325(b)(4)(A)(ii) and refuse to give those words their common, ordinary meaning. *See Dewsnup v. Timm,* 502 U.S. 410 (1992). The fact that only a portion of the income earned by the Debtor's non-filing spouse is included in the calculation of the Debtor's "disposable income" to be paid to unsecured creditors does not change the unambiguous statutory requirement imposed by §1325(b)(4)(A)(ii) that the Debtor must use the full amount of his non-filing spouse's monthly income in calculating the required length of his proposed Chapter 13 reorganization plan. *See Lamie v. U.S. Trustee,* 540 U.S. 526, 536 (2004) (the "preference for avoiding surplusage constructions is not absolute" and can be "offset by the canon that permits a court to reject words as surplusage if inadvertently inserted or if repugnant to the rest of the statute.") (quoting *Chickasaw Nation v. U.S.,* 534 U.S. 84, 94 (2001)); *Dole v. United Steelworkers of Am.,* 494 U.S. 26, 35 (1990) ("Our starting point is the language of the statute, but in expounding a statute, we are not guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.").

Finally, this Court is not persuaded that the calculation of the "applicable commitment period" in Official Form 22C helps to resolve the dispute in this case. A basic tenet of statutory interpretation is that the language of §1325(b)(4), and not the instructions on a form, controls the interpretation of the statute. *See In re Arnold,* 376 B.R. 652, 653 (Bankr. M.D. Tenn. 2007); *In re Graham,* 363 B.R. 844, 850 (Bankr. S.D. Ohio 2007). *See also In re Lasowski,* 384 B.R. 205 fn 7 (8th Cir. BAP 2008). *See also In re Anstett*, 383 B.R. 380, 384 n. 7 (Bankr. D. S.C. 2008) (noting that forms do not create substantive rights or answer ambiguity). Moreover, bankruptcy courts have struggled to

9

interpret and apply the calculations required by Official Form 22. *See, e.g., In re Quartermann*, 342 B.R. 647 (Bankr. M.D. Fla. 2006) (discussing the calculation and definition of current monthly income); *In re Travis,* 353 B.R. 523 (Bankr. E.D. Mich. 2006) (noting that the calculation of current monthly income when there is a non-filing spouse "is complicated). The Advisory Committee Notes for Official Form 22C explain that the calculations are not intended to finally determine a debtor's plan length and that the check box requiring the debtor to state whether the applicable commitment period is three or five years "is intended to inform standing trustees and other interested parties about these items, but does not prevent the debtor from arguing that the calculations required by the form do not accurately reflect the debtor's disposable income." The Advisory Committee Notes also point out that, for purposes of calculating the applicable commitment period, "as under [§707(b)(6)], the CMI of the debtor's spouse is required to be combined with the debtor's CMI, and there is no exception for spouses who are legally separated or living separately."

## CONCLUSION

For the foregoing reasons, the Court concludes that the inclusion of a non-filing spouse's income in the calculation of the "applicable commitment period" is required by §1325(b)(4)(A)(ii) and is consistent with §1325(b) as a whole. The Court, therefore, will sustain the Chapter 13 trustee's objection to confirmation of the Debtor's proposed plan. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated into contested

matters in bankruptcy cases by Federal Rules of Bankruptcy Procedure 7052 and 9014.[3]

An appropriate order will be entered which is consistent with this Memorandum Opinion.

Signed on 9/17/2008

_____ SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

---

[3] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. Likewise, to the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.